IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:23CR350 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| MUSTAFA AYOUB DIAB, | ) | GOVERNMENT'S TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by its counsel, Carol M. Skutnik, Acting

United States Attorney, and Vanessa V. Healy and Brenna L. Fasko, Assistant United States

Attorneys, and hereby submits the attached Trial Brief.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

By: /s/ Vanessa V. Healy
Vanessa V. Healy (OH: 0092212)
Brenna L. Fasko (OH: 0084897)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3652/3618
(216) 522-2403 (facsimile)
Vanessa.Healy@usdoj.gov
Brenna.Fasko@usdoj.gov

## I.   **OVERVIEW OF THE CASE**

At trial, the Government intends to offer evidence of the following:

Defendant Mustafa Ayoub Diab ("Diab") was the owner of TaxPro$, an income tax preparation service in the Akron area.  During the COVID-19 pandemic, Diab held himself out to be an expert in obtaining various pandemic-related benefits, including Pandemic Unemployment Assistance ("PUA").  He convinced many of his tax preparation clients, who had already provided him with their personally identifiable information ("PII"), that they qualified for the PUA program.  Within months, Diab quickly gained the reputation as an individual who could obtain approval for various pandemic benefits and provide much needed cash payments to struggling individuals.  His clients began to refer their friends, neighbors, and family members to Diab — and Diab happily took their PII and applied for PUA on their behalf.

However, unbeknownst to his clients, Diab kept a large portion of the PUA funds for himself.  Evidence at trial will show that Diab set up an elaborate network of bank accounts in in the names of his wife and co-conspirator, Elizabeth Robinson, his sister, Shurouq Diab, and other victims, to conceal his control of those accounts.  Diab then linked these bank accounts under his control to his client's PUA accounts and diverted the PUA benefits to those accounts rather than valid accounts in the clients' names.  Once diverted, Robinson and Shurouq Diab would withdraw the majority of the PUA funds in cash for Diab to use for himself.

Diab's scheme also extended to the Paycheck Protection Program ("PPP").  Using his client's PII, Diab applied for multiple loans for fictitious companies.  This was all done without his clients' knowledge, permission, or benefit.  Diab's scheme resulted in the diversion of more than $700,000 in PUA and PPP benefits.

Most troubling, Diab never let his clients ever actually see the PUA or PPP applications he was filing on their behalf.  These applications were filled in inaccuracies, fraudulent statements, and outright lies.  In fact, many of his clients did not qualify for the PUA program at all — despite Diab's assurances to them that "everyone" was entitled to these payments.

Testimony at trial will establish that Diab's scheme had a consistent pattern across clients/victims.  Diab frequently would visit them at their homes, laptop in hand.  He would take photos of their driver's license, birth certificate, and social security card.  Diab would create a fake email address for each victim that he or she did not have access to and apply for the PUA benefits with this information, all without explaining to his clients why they qualified for it, or what he was putting into the application to justify it.  Testimony at trial will reveal that Diab would make up professions, income levels, and even fictional dependent children — all for the purpose of maximizing the approval of the PUA and benefit amount.  Diab would not give his clients the ability to log into their PUA account so they could see what was filed or what benefits were approved and being paid out.  These clients were individuals who trusted Diab to help them navigate the pandemic-era benefits.  Diab exploited this trust and used their PII to enrich himself and his co-conspirators.

## II.  <u>CONTROLLING LAW</u>

Diab is charged in Count 1 with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349.  To sustain its burden of proof for this crime, the Government must prove all of the following elements beyond a reasonable doubt:

    A.    Statutory Language

        Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

B.      Elements

1. Two or more persons conspired, or agreed, to commit the crime of wire fraud;
2. The defendant knew of the conspiracy and its objects, aims, or goals; and
3. The defendant joined the conspiracy with the intent that at least one of the conspirators engage in conduct that satisfies the elements of wire fraud.

Diab is charged in Count 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 with Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2.  To sustain its burden of proof for these crimes, the Government must prove all of the following elements beyond a reasonable doubt:

A.      Statutory Language

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

B.      Elements

1. First, that the defendant knowingly participated in, devised, or intended to devise a scheme to defraud in order to deprive another of money or property, to obtain money and property by means of false and fraudulent pretenses, representations, and promises;
2. Second, that the scheme included a material misrepresentation or concealment of a material fact;
3. Third, that the defendant had the intent to defraud; and
4. Fourth, that the defendant caused another to use wire, radio or television communications in interstate commerce in furtherance of the scheme.

Diab is charged in Count 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, and 36 with Theft of Government Funds, in violation of 18 U.S.C. §§ 641 and 2.  To sustain its burden of proof for these crimes, the Government must prove all of the following elements beyond a reasonable doubt:

A.      Statutory Language

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
>
> Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted.

B.  Elements

  1. The money or thing of value belonged to the United States and had a value in excess of $1,000;

  2. The defendant embezzled, stole or converted such money or thing of value to the defendant's own use or to the use of another; and

  3. The defendant did so knowingly, with the intent to deprive the owner of the use or benefit of the money or thing of value so taken.

Diab is charged in Count 37, 38, 39, 40, 41, 42, 43, 44, 45, and 46 with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1).  To sustain its burden of proof for these crimes, the Government must prove all of the following elements beyond a reasonable doubt:

A.  Statutory Language

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person.

B.  Elements

  1. The defendant transferred, possessed, or used a means of identification of another person without lawful authority;

  2. The defendant did so knowingly;

  3. The defendant knew the means of identification belonged to another person; and

  4. That the transfer, possession, or use was during and in relation to a violation of wire fraud.

Diab is charged in Count 47 with Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h).  To sustain its burden of proof for this crime, the Government must prove all of the following elements beyond a reasonable doubt:

A.    Statutory Language

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

B.    Elements

1.     Two or more persons conspired, or agreed, to commit money laundering; and
2.     The defendant knowingly and voluntarily joined the conspiracy.

III.     **STIPULATIONS**

The parties have conferred and have agreed on the following stipulations:

1.      The crime of Wire Fraud in violation of 18 U.S.C. § 1343 was a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).

2.      If called as witnesses, representatives of the respective agencies, businesses, and banks, the Ohio Department of Job and Family Services ("ODJFS"), Small Business Administration ("SBA"), Alphabet, Inc., Stride Bank, J.P. Morgan Chase, PNC Bank, US Bank, Womply, Bancorp, Choice Bank, Woodforest National Bank, and Citizens Bank, would testify that the documents and materials they have provided were true and accurate copies of the documents and materials they purport to be within the meaning of Rules 803, 901, and/or 902 of the Federal Rules of Evidence.  The parties further stipulate that the exhibits produced from those records are business records of their respective entities, were created contemporaneous with the events recorded therein, were created by someone familiar with the events recorded therein and were maintained in the ordinary course of their business.

3.      The Pandemic Unemployment Insurance ("UI") benefits applications referenced in Counts 2-10 of the Superseding Indictment were submitted through ODJFS's website, the servers for which were located in Virginia, thereby traveling in interstate commerce.

4.      The Paycheck Protection Program loan applications referenced in Counts 11 and 12 of the Superseding Indictment were submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia or Oregon, thereby traveling in interstate commerce.

5.      The Pandemic UI benefits referenced in Counts 25-36 were funded by the U.S. Department of Labor, which was a department or agency of the United States.

Along with this trial brief, the parties have filed joint stipulations, consistent with the Court's trial order.

**IV.**     **POTENTIAL EVIDENTIARY ISSUES**

    A.     USE OF "INEXTRICABLY INTERTWINED" OR OTHERWISE ESSENTIAL *RES GESTAE* EVIDENCE, OR IN THE ALTERNATIVE 404(B) EVIDENCE

In its case-in-chief, the Government intends to introduce limited evidence that pre-dates the timeframe alleged in the Superseding Indictment.  Such evidence includes (1) tax information from the year 2019 that was uploaded to various PUA applications; (2) testimony from several victims/witnesses that Diab had prepared their taxes in the years prior to the COVID-19 pandemic; and (3) testimony from several victims/witnesses that the information contained on their tax returns was false.  All of this evidence will be used to provide background information with respect to Diab's scheme and his ability to obtain the PII of the victims for which he filed PUA benefits and PPP loans.  Diab held himself out as a tax professional, and many of the Government's witnesses will testify that they first encountered Diab related to preparing their taxes.  While the Government has not bought any tax charges against Diab, the testimony from witnesses regarding their false tax returns will further establish that the PUA and PPP applications contained fraudulent information.  Moreover, it is impossible to separate out the PUA application from any relevant tax information provided by the witnesses, because the award of PUA benefits was based, in part, on the income listed on 2019 tax returns attached to the PUA application.

The Government submits that this evidence is relevant and admissible because it is inextricably intertwined or otherwise *res gestae* background evidence essential for the jury to understand the underlying events.  The Sixth Circuit has deemed that Rule 404 of the Federal Rules of Evidence does not bar "background" or *res gestae* evidence.  In *United States v. Hardy*,

the Sixth Circuit announced, "[t]his court has previously recognized the propriety of introducing

'background' evidence.  Such evidence, often referred to as 'res gestae' does not implicate Rule

404(b)."  228 F.3d 745, 748 (6th Cir. 2000) (citing *United States v. Buchanan*, 213 F.3d 302, 311

(6th Cir. 2000).  The *Hardy* court then explained:

> Rather, the very definition of what constitutes background
> evidence contains inherent limitations. *Buchanan, Paulino* and
> other cases dealing with this issue teach that background or *res
> gestae* evidence consists of those other acts that are inextricably
> intertwined with the charged offense or those acts, the telling of
> which is necessary to complete the story of the charged offense.

> Proper background evidence has a causal, temporal or spatial
> connection with the charged offense. Typically, such evidence is a
> *prelude to the charged offense*, is directly probative of the charged
> offense, arises from the same events as the charged offense, forms
> an integral part of a witness's testimony, or completes the story of
> the charged offense.

228 F.3d at 748 (emphasis added) (citing 2 Jack B. Weinstein, Margaret A. Berger & Joseph M.

McLaughlin, *Weinstein's Federal Evidence*, § 404.20[2][c] and [d]; *United States v. Weinstock*,

153 F.3d 272, 277 (6th Cir.1998); *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.1995);

*United States v. Townsend*, 796 F.2d 158, 162 (6th Cir.1986); *United States v. Cunningham*, 103

F.3d 553, 557 (7th Cir.1996); and Jennifer Y. Schuster, *Uncharged Misconduct Under Rule

404(b): The Admissibility of Inextricably Intertwined Evidence,* 42 U. Miami Law Review 947

(March/May 1998) (*See United States v. Rice*, 2004 WL 333800 (6th Cir. 2004).

"The jury is entitled to know the 'setting' of a case.  It cannot be expected to make its

decision in a void--without knowledge of the time, place and circumstances of the acts which

form the basis of the charge." *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir. 1977).  *See

also*, *United States v. Vincent*, 681 F.2d 462, 465 (6th Cir. 1982).  Further, prosecutors are

permitted to provide the jury with a "natural narrative of events," and are not limited to a

"sanitized recounting of the facts."  *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015)

(internal quotation marks omitted).  Therefore, evidence of background, *res gestae*, or a

continuing pattern of illegal activity is properly admissible as it is not precluded by Rule 404(a)

of the Federal Rules of Evidence.

Testimony and documentary evidence regarding tax information associated with the PUA

applications at issue here is properly admitted because it provides context as to why so many

individuals sought out Diab's services and why he had their PII to begin with.  It is also properly

admitted because the tax information which was included within the PUA applications provides

a "material misrepresentation or concealment of a material fact" that is needed for Counts 2-12

of the Superseding Indictment.  Indeed, without these tax returns included with the PUA

applications, many of the benefits Diab had applied for would not have been awarded.  Thus, it is

"directly probative of the charged offense," "forms an integral part of witnesses' testimony," and

is necessary to "complete[] the story of the charged offense."  *Hardy*, 228 F.3d at 748.  The

Government therefore anticipates offering this information into evidence on these grounds.

The aforementioned evidence is also inextricably intertwined with the underlying case.

In *United States v. Barnes*, the Sixth Circuit held:

> [T]he Court of Appeals explained that Rule 404(b) does not apply
> where the challenged evidence is "inextricably intertwined" with
> evidence of the crime charged in the indictment.  When the other
> crimes or wrongs occurred at different times and under different
> circumstances from the offense charged, the deeds are termed
> "extrinsic."  "Intrinsic" acts on the other hand, are those that are
> part of a single criminal episode.

49 F.3d 1144, 1149 (6th Cir. 1995) (citing *United States v. Torres*, 685 F.2d 921, 924 (5th Cir.

1982); *see also United States v. Henderson*, 626 F.3d 326 (6th Cir. 2010) ("Where the

challenged evidence is 'intrinsic' to, or 'inextricably intertwined' with evidence of, the crime

charged, Rule 404(b) is not applicable"); *United States v. Daulton*, 266 F. App'x 381 (6th Cir. 2008) (citation omitted) ("Evidence is inextricably intertwined when the charged conduct and the uncharged conduct 'are part of the single criminal episode or the other acts were necessary preliminaries to the crime charged.'"); *United States v. Rozin*, 664 F.3d 1052 (6th Cir. 2012) (in tax fraud case, evidence of prior year activities not 404(b), but rather intrinsic evidence); *United States v. Monsour*, 893 F.2d 126 (6th Cir. 1990) (investigative link evidence, such as the defendant acting "suspiciously" at another bank branch a few days prior to the robbery, was intrinsic evidence).  Therefore, when other acts are "intrinsic" to charged conduct or part of a single criminal episode they are "inextricably intertwined" and not subject to a Rule 404(b) analysis.

In other instances, evidence is intrinsic when exclusion would leave a "chronological or conceptual void in the story of the crime," *United States v. Ojomo*, 332 F.3d 485, 488-89 (7th Cir. 2003), or when the acts complete the story of the crime on trial.  *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002), or explains the circumstances of the case. *United States v. Holt*, 460 F.3d 934 (7th Cir. 2006); *cf. United States v. Poulsen*, 655 F.3d 492 (6th Cir. 2011) (evidence from defendant's related separate obstruction of justice case admissible as 404(b) consciousness of guilt evidence in his securities case); *United States v. Martinez*, 430 F.3d 317 (6th Cir. 2005) (evidence that part of the conspiracy is not "other acts" evidence).  In this case, the fact that many of these victims went to Diab for tax services is essential evidence needed for the jury to consider.  It completes the story of the crime on trial, and its absence would leave a conceptual void in the story.  *Senffner*, 280 F.3d at 764; *Ojomo*, 332 F.3d at 488-89.  It is also necessary to explain the circumstances of the case.  *Holt*, 460 F.3d at 934.

Accordingly, the Government respectfully moves this Court for a ruling that the evidence

it intends to offer as "inextricably intertwined" or *res gestae* evidence be admitted during the course of the jury trial.  In the event the Court finds the Government's proposed evidence is not admissible on those grounds, the Government then moves this Court to allow the introduction of all the categories of evidence identified in this pleading as Rule 404(b) evidence to show Diab's intent, plan, knowledge, identity, modus operandi, or absence of mistake in the filing of the PUA benefit and PPP loan applications in this case.

      B.      NOTICE OF GOVERNMENT'S INTENTION TO INTRODUCE EVIDENCE PURSUANT TO F.R.E. 404(B)

          1.     Notice

The Government intends to introduce testimony through Government witnesses that, prior to the dates charged in the indictment and during the relevant period of the conspiracy, Diab had prepared tax returns which contained fraudulent information.  Additionally, the Government intends to elicit testimony that Diab had uploaded 2019 tax returns to his client's PUA applications which contained inaccurate or fraudulent information.

          2.     Law and Argument

Evidence that Diab was preparing fraudulent tax returns is admissible under Federal Rule of Evidence 404(b).  Generally, "other acts evidence" is not admissible "to prove a person's character in order to show that on a particular occasion a person acted in accordance with that character."  Fed. R. Evid. 404(b).  It may, however, be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or lack of accident."  *Id.*  "[T]he rule is one of inclusion rather than exclusion."  *United States v. Copeland*, 51 F.3d 611, 614 (6th Cir. 1995).

The admissibility of Rule 404(b) evidence is governed by a "three-step analysis."  *United States v. Mack*, 729 F.3d 594, 601 (6th Cir. 2013) (citing *United States v. Clay*, 667 F.3d 689,

693 (6th Cir. 2012)).  The first inquiry is whether there is sufficient evidence that the other act actually occurred.  *Id*.  Second is "whether the evidence is probative of a material issue other than character."  *Id*.  Third, courts must consider whether the probative value of the evidence substantially outweighs any unfair prejudice, under Rule 403.  *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006).  The evidence is viewed in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.  *Id*.  The district court need not make a finding that the proponent proved the other act by a preponderance of the evidence; "such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act."  *Huddleston v. United States*, 485 U.S. 681, 685 (1988).  In addition to its interplay with the Rule 404(b) analysis, Rule 403 independently "provides a balancing test for excluding relevant evidence."  *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018).  This balancing test is "strongly weighted toward admission."  *Id*.

In this case, evidence supports that Diab prepared and uploaded fraudulent 2019 tax returns to his client's PUA applications.  This evidence is offered to show Diab's intent, plan, knowledge, and opportunity to fraudulently obtain PUA benefits on behalf of his clients, which are material issues in this case. *See Merriweather,* 78 F.3d at 1076 (an admitted purpose is material if the defendant has placed or could likely place the evidence at issue, or if it is an element the government must prove in the case).  Specifically, Diab is likely to argue that the Government cannot prove that the information contained in the PUA applications is false.  The Government intends to elicit testimony from several of his clients, who will confirm that the information contained in the 2019 tax returns included with the PUA applications was not accurate.

Once the moving party shows an admissible purpose for entering evidence of past actions, the court must weigh its potential prejudicial effect against its probative value. *Id.* at 1077. "Although relevant, evidence may be excluded if its probative value is *substantially outweighed* by the danger of unfair prejudice." Fed. R. Evid. 403. Evidence is unfairly prejudicial if "the likelihood is very great that the jurors will use the evidence precisely for the purpose it may not be considered; to suggest that the defendant is a bad person ... and that if 'he did it before he probably did it again.'" *United States v. Johnson*, 27 F.3d 1186, 1193 (6th Cir. 1994). However, evidence that is prejudicial only in that it paints a defendant in a bad light, but does not confuse or mislead the jury, is not unfairly prejudicial. *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). In other words, unfair prejudice does not result "from the legitimate probative force of the evidence" rather, it results only when prejudicial evidence "tends to suggest a decision on an improper basis." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988). Additionally, in applying Rule 403's balancing test, the government's need for the evidence is an important consideration. *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989).

In this case, the Government must prove that Diab made a material misrepresentation in order to obtain PUA benefits under false pretenses. Evidence that the tax returns uploaded to the PUA applications were fraudulent is critical in showing that Diab made false statements in the submitted PUA applications. Thus, this evidence is critical in showing his intent and plan to fraudulently obtain PUA benefits, and his opportunity and knowledge of his client's income tax returns. Further, the risk of unfair prejudice is limited relative to the probative value and any chance that presentation of such evidence will mislead or confuse the jury can be cured with a limiting instruction. Accordingly, this evidence should be admitted.

C.     <u>CROSS EXAMINATION ON NON-QUALIFYING CONVICTIONS</u>

Defense counsel should be prevented from commenting or cross-examining witnesses on allegations, past arrests, dismissed charges, pending unresolved cases or non-qualifying convictions under Federal Rules of Evidence 608 and 609.  A defendant's right to confront the witnesses against him through cross-examination is not absolute.  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits upon such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant."  *Id.* at 679.  The Government intends to present the testimony of several witnesses in its case in chief, some of whom have been arrested (but have not suffered convictions), have been merely accused of crimes without any further actions, or have otherwise unqualifying convictions.  Defense may not properly use these occurrences for impeachment.

Under Federal Rule of Evidence 609(a), "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year," and "evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness."  *United States v. Morrow*, 977 F.2d 222, 227 (6th Cir. 1992).  In this regard, arrests, dismissed charges, pending, unresolved cases and acquittals are not convictions.  Moreover, the underlying factual basis for a prior conviction is generally not a proper subject for impeachment under Rule 609.  *See United States v. Lopez-Medina*, 596 F.3d 716, 737-38 (10th Cir. 2010); *United States v. Dansker*, 537 F.2d 40, 59-60 (3d Cir. 1976).  Thus, unless there is some other articulable, good faith basis for attempting to impeach a

witness about prior arrests, dismissed charges, pending unresolved charges, acquittals, nonqualifying convictions, or underlying factual basis, no witness should be cross-examined in any manner about such subjects. The Government hereby requests that the Court instruct defense counsel: (1) to notify the Government prior to cross-examination of a witness of any prior convictions that they believe qualify under Rule 609(a); and: (2) if the Government disagrees as to the proper impeachment purpose for one or more of the convictions, that the Court resolve the matter outside of the presence of the jury, since sustained objections in the presence of the jury during trial are a less effective means of honoring Rule 609 than is compliance with the rule before an improper question is asked.

### D. LIMITED ALLOWANCE OF LEADING QUESTIONS OF GOVERNMENT WITNESSES ON DIRECT EXAMINATION

The Government intends to call several of Diab's former clients, as well as one of Diab's family members who participated in the scheme. The Government is aware that several of these clients, as well as this family member, either met Diab while he was incarcerated or were aware of Diab's criminal history. The Government, in preparation for this trial, has diligently instructed these witnesses to not mention that Diab was incarcerated or had a criminal history. However, in an abundance of caution, the Government requests that the Court allow for limited leading questions of these witnesses on direct examination. These leading questions would be limited to carefully establish how these individuals knew Diab, without revealing that he had served time in prison.

Under Federal Rule of Evidence 601, leading questions are typically not permitted on direct examination. F.R.E. 601(c)(1). However, the use of leading questions during direct examination of a witness falls within the sound discretion of the court. *United States v. Shoupe*,

548 F.2d 636, 641 (6th Cir. 1977). *See also United States v. Pugh*, 404 Fed.App'x 21, 28 (6th Cir. 2010).

Here, it is in the interest of justice to allow for the Government to ask carefully phrased leading questions to its witnesses on direct examination to avoid any testimony regarding Diab's incarceration or criminal history. There would be no prejudice to Diab in allowing this. In fact, it would be the opposite — it would prevent the jury from hearing any prejudicial testimony regarding Diab's criminal history.

E.  IF DEFENDANT TESTIFIES THE GOVERNMENT INTENDS TO USE HIS PRIOR CONVICTIONS UNDER FED. R. EVID. 609

Diab has numerous prior felony and misdemeanor convictions. If Diab chooses to testify in his defense, the Government may inquire about his prior convictions in accordance with Federal Rule of Evidence 609 which states,

> "(a) The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> (A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and
> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
> (2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement."

Fed. R. Evid. 609.

The Government is aware of the prohibitions against mentioning Diab's incarceration status or criminal history and will refrain from eliciting any testimony on those subjects during its case-in-chief. As noted above, the only circumstance in which his criminal history may become relevant is in the event of his testimony. *See* Fed. R. Evid. 609. Evidence of the specific nature and charge of his prior convictions are admissible if the "probative value of admitting this

evidence outweighs its prejudicial effect." Fed. R. Evid. 609(a)(1)(B). This Court has "broad discretion" to determine whether the actual charge of conviction shall be admitted to the jury. *United States v. Morrow*, 977 F.2d 222, 228 (6th Cir. 1992) (citing *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977)).

Diab's prior convictions are of a nature that would not have a prejudicial effect on the jury. The Government does not intend to elicit testimony about the facts and circumstances of the offenses, but simply, the names of the offenses. The value of asking Diab on cross examination whether he has prior convictions for theft, fraud, or forgery offenses is more probative than prejudicial. When the Government elicits testimony from Diab about the number and type of prior convictions, it is within the parameters of Rule 609. *See United States v. Henry*, 206 F. App'x 452, 454 (6th Cir. 2006). Further, the Government's cross-examination of Diab can include whether he pled guilty or was found guilty of specific offenses, served time in prison, and whether he would want to avoid returning to prison. *United States v. Tincher*, 8 F.3d 350 (6th Cir.), op. withdrawn, 8 F.3d 350, 1993 U.S. App. LEXIS 27295 (6th Cir. 1993). Here, the Government is not seeking to elicit the facts and circumstances of the prior convictions, but naming the specific offense is well within the bounds of law and probative to the nature of his prior felonies.

In the event Diab testifies and testifies inconsistent, incomplete, or misleading regarding his prior convictions, the Government reserves the right to impeach him with not only the named offense but specifics regarding the prior conviction. If Diab "opens the door" by offering testimony that explains away an earlier conviction or offers testimony inconsistent with the facts underlying an earlier conviction, the government may inquire into the details of the conviction. *United States v. Douglas*, 408 F.3d 922, 923 (7th Cir. 2005). The Government recognizes that an

open door is not a license to dwell on the details of the prior conviction and shift the focus to

Diab's prior bad acts, but should be permitted to explore the details of the inconsistencies during

cross-examination.

For the reasons outlined herein, the Government submits that the prior convictions of

Diab that fall within Rule 609 are relevant and admissible if Diab elects to testify.  It is

permissible for the jury to hear the types of offenses Diab has committed because that

information is probative for impeachment purposes. As a result, the Government requests that

the Court rule in accordance with the above points and authorities.

## V.  THE COURT SHOULD PERMIT THE GOVERNMENT TO HAVE TWO CASE AGENTS REMAIN IN THE COURTROOM DURING TRIAL

The Government moves this Court to permit two case agents, Special Agent ("SA")

Carson Gossmeyer and Forensic Accountant ("FOA") Alexandra Madonia of the Federal Bureau

of Investigation ("FBI") (referred to together as "the Agents") to remain in the courtroom during

trial.  The Government anticipates both Agents will testify at trial.  While the Government

anticipates that the Court will enter a witness separation order in this case pursuant to Fed. R.

Evid. 615, the Government requests that the Court permit the Agents to remain in the courtroom

to assist the Government at counsel table.

Fed. R. Evid. 615(b) specifically excludes from sequestration "an officer or employee of

a party that is not a natural person, after being designated the party's representative by its

attorney."  Both SA Gossmeyer's and FOA Madonia's presence in the courtroom during trial is

essential to the presentation of the Government's case.  Therefore, the Government anticipates

designating the Agents as Government representatives present at counsel table.

Federal Rule of Evidence 615(c) provides an additional exception to the court's

sequestration order for witnesses "whose presence is shown by a party to be essential to the

presentation of the party's cause." *See United States v. Mohney*, 949 F.2d 1397, 1404-05 (6th Cir. 1991) (referencing former Rule 615(3)).  The rule, therefore, allows the prosecution to designate representatives in addition to the case agent for certain prosecutions that are sufficiently complex so that "the aid of more than one law enforcement officer is needed to sort through extensive, technical evidence, and to help 'map out strategy.'" *United States v. Phibbs*, 999 F.2d 1053, 1072 (6th Cir. 1993).  "The 'essential' witness exception set out in Rule 615(3) 'contemplates such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation.'" *Id*. at 1073 (quoting Advisory Committee Notes to Fed. R. Evid. 615).

The presence of the Agents in court is essential.  The Agents have served as key parts of the investigative team assigned to this matter and have become conversant in the evidence.  The Agents will prepare, organize and familiarize themselves with the exhibits in this case related to the schemes their respective agencies investigated.  Their presence will streamline the presentation of evidence in this matter.  Accordingly, the Government submits that the Agents are essential witnesses pursuant to Rule 615(c) who both should be permitted to sit at the Government's table for the entirety of the trial.

## VI.    **DEFENDANT'S STATEMENTS**

The Government intends to offer out-of-court statements made by Diab, including emails, text messages, and other statements by Diab to others.  These statements will be admissible under one or more of the following theories: (1) the statements are non-hearsay; (2) the

statements were made by a party-opponent pursuant to Federal Rule of Evidence 801(d)(2); or (3) the statements are subject to another specific hearsay exception.[1]

A.    NON-HEARSAY STATEMENTS

A large portion of Diab's out-of-court statements are not subject to the rule against hearsay because they are not being offered for the truth of the matter asserted.  Federal Rule of Evidence 801(c) defines hearsay as an out-of-court statement offered to prove the truth of the matter asserted.  *See United States v. Johnson*, 71 F.3d 539, 543 (6th Cir. 1995).  As such, an out-of-court statement is not hearsay if (1) it does not contain an assertion, *see United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003), or (2) it is not offered to prove the truth of what it asserts, *see United States v. Rodriguez-Lopez*, 565 F.3d 312, 314-15 (6th Cir. 2009).

Likewise, statements introduced to prove their falsity, rather than the truth of what they assert, do not implicate the rule against hearsay or the Confrontation Clause.  *See United States v. Porter*, 886 F.3d 562, 566-67 (6th Cir. 2018).  Statements that consist solely of questions or commands are not hearsay because they do not contain assertions.  *See Rodriguez-Lopez*, 565 F.3d at 314.  Other statements will be admissible to provide context to related evidence in the case.  *See United States v. Henderson*, 626 F.3d 326 (6th Cir. 2010) (holding that a non-party's half of a conversation with defendant was not hearsay, because it was admissible as context for the defendant's half).

Finally, many of Diab's out-of-court statements are verbal acts that are not subject to the hearsay rule.  "A verbal act is an utterance of an operative fact that gives rise to legal

---

[1]    This section is not intended as an exhaustive list of every out-of-court statement that may be introduced by the Government at trial.  Rather, this section is intended to outline the legal theories the Government intends to rely on for admitting the statements.

consequences." 5 WEINSTEIN'S FEDERAL EVIDENCE § 801.11(3) (2012). For verbal acts, "[i]t is the fact that the declaration was made, and not the truth of the declaration, which is relevant." *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008). Thus, where a statement directs the formation and operation of a conspiracy, illegally solicits someone else to perform an act, or puts forward a bribe, that statement is not barred by the hearsay rules, regardless of the truth or falsity of its assertion. *See United States v. Forfana*, 543 F. App'x 578, 580 (6th Cir. 2013) ("words used to offer a bribe amount to 'verbal acts' with their own legal significance and do not qualify as hearsay").

  B.  <u>STATEMENTS BY A PARTY OPPONENT</u>

   In addition to the exceptions cited above, a defendant's own statements are admissible against him personally under Federal Rule of Evidence 801(d)(2)(A) as statements made by a party opponent. Fed. R. Evid. 801(d)(2)(A); *United States v. Matlock*, 415 U.S. 164, 172 (1974). Other statements may qualify as adoptive admissions under Rule 801(d)(2)(B) if the defendants "manifested an adoption or belief in the statements' truth." *See United States v. Williams*, 445 F.3d 724, 735 (4th Cir. 2006); *United States v. Safavian*, 435 F. Supp. 2d 36, 43-44 (D.D.C. 2006) (ruling that emails authored by defendant may be admissible as statements by a party opponent, and emails forwarded by defendant may be admissible as adoptive admissions).

**VII.**  <u>**LIMITATION ON DEFENDANT SEEKING TO ADMIT HIS OWN OUT-OF-**</u>
<u>**COURT STATEMENTS**</u>

   Out-of-court statements made by a party-opponent are excluded from the definition of hearsay under Federal Rule of Evidence 801(d)(2), but this exception does not apply when the same statements are offered by the party himself. The party-opponent exception reflects the fact that the adversarial process allows the party-declarant to rebut his or her own admissions by testifying at trial. *See United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005). This

exception does not, however, extend to a party's attempt to introduce his or her own statements through the testimony of other witnesses. *See United States v. Payne*, 437 F.3d 540, 547-48 (6th Cir. 2006). Precluding a defendant from eliciting inadmissible hearsay statements does not violate the Confrontation Clause. *See United States v. Ford*, 761 F.3d 641 (6th Cir. 2014).

Therefore, the Government respectfully requests that the Court prohibit Diab from introducing any of his out-of-court statements at trial through any other witness.

## VIII. <u>SUBMITTING THE INDICTMENT TO THE JURY.</u>

The Sixth Circuit has held that the trial judge has the discretion to submit the Indictment to the Jury in a criminal case so long as limiting instructions are given to the effect that the Indictment is not to be considered as evidence of the guilt of the accused. *United States v. Cooper*, 577 F.2d 1079, 1089 (6th Cir. 1978) ("It was not error for the trial judge to have permitted the jury to have a written copy of the indictment, especially where, as here, the jury was fully instructed that it could not consider the indictment as evidence of the crime itself.") *Accord United States v. Russo*, 480 F.2d 1228, 1244 (6th Cir. 1973) ("The court did not commit error in permitting the jury to have the indictment during its deliberation since an instruction was given that the indictment is not evidence of guilt and only contains a statement of the charges.").

In the 2019 edition of the Sixth Circuit Pattern Jury Instructions (Criminal), the Sixth Circuit Committee on Pattern Jury Instructions specifically addressed the issue of submitting the Indictment to the jury, either by reading it to the jury or by providing a copy to the jury during their deliberations:

> Reading the indictment to the jury is generally within the discretion of the district court. *United States v. Smith*, 419 F.3d 521, 530 (6th Cir. 2005), citing *United States v. Maselli*, 534 F.2d 1197, 1202 (6th Cir. 1976). Instructions stating that "the purpose of an indictment is only to cause the person named therein to be brought to trial and to advise him of the nature of the charge or charges against him" have been characterized as "desirable" and "customary." *United States v. Baker*,

418 F.2d 851, 853 (6th Cir. 1969). Earlier versions of this commentary did not recommend that the trial judge read the indictment to the jury, and also recommended that the trial judge not paraphrase the indictment. The Committee recognizes that district court practices on reading or summarizing the indictment vary widely, and takes no position on the best practice. **However, jury confusion can arise, particularly in complex cases, if the indictment is not read, accurately summarized or sent to the jury room**. *See, e.g., United States v. Bustamante*, 1992 WL 126630, 1992 U.S. App LEXIS 13407 (6th Cir. 1992) (unpublished). As the Eighth Circuit states in Note 2 to its Model Criminal Instruction 1.01 (2003 ed.), **"Depending on the length and complexity of the indictment and the individual practices of each district judge, the indictment may be read, summarized by the court, summarized by the prosecution or not read or summarized depending on what is necessary to assist the jury in understanding the issues before it."** If the indictment is furnished in writing to the jury, a limiting instruction such as Instruction 1.03(1) must be given. *United States v. Smith*, 419 F.3d 521, 531 (6th Cir. 2005) (omission of limiting instruction was error but not plain error). The Committee takes no position on the practice in some districts of providing the jury with a copy of the indictment.

Reading the indictment to prospective jurors is  not an abuse of instructions are given to the effect that the indictment is not to be considered as evidence of guilt. *United States v. Lawson*, 535 F.3d 434, 441 (6th Cir. 2008)  Such a limiting instruction is found in Instruction 1.03(1).

Committee Commentary 2.02, Sixth Circuit Pattern Jury Instruction – Criminal (2019) (emphasis added).

The Government respectfully requests that the Court submit the Superseding Indictment to the jury during deliberations, or alternatively, that the Court read the relevant sections of the Superseding Indictment to the jury when providing them the jury instructions. In either case, the Court should issue a limiting instruction that the Superseding Indictment is not evidence of Diab's guilt.

## IX.  ADMISSIBILITY OF SUMMARY EXHIBITS

The Government has obtained voluminous bank, financial, and IP records pertaining to this case.  To present relevant evidence contained within these voluminous records in an

effective and efficient manner, law enforcement agents have created summary charts to which they will testify during the Government's case-in-chief.  Federal Rule of Evidence 1006 permits the use of summary charts by providing that "contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation."  The Sixth Circuit has approved the use of summary materials. *See United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998).

The summary charts will accurately depict the evidence to be presented to the jury and will streamline the trial considerably by condensing the records.  In accordance with established practice in the Sixth Circuit and other circuits, the Government intends to use in its case-in-chief summary charts detailing and organizing the Government's evidence, in conjunction with the testimony of certain Government witnesses.  *See United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998); *United States v. Scales,* 594 F.2d 558 (6th Cir.), *cert. denied*, 441 U.S. 946 (1979). So long as the summary charts are properly authenticated and the contents of both the charts and the summary witness's testimony are limited to evidence which is admissible or has been admitted, the use of such charts and witnesses will contribute to an orderly and informed trial and will not prejudice the rights of Diab.

The use of summary exhibits is permitted by Fed. R. Evid. 1006:

> The contents of voluminous writings, recordings, or photographs may be presented in the form of a chart, summary or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

In *Scales*, a leading case on the use of summary charts which has been followed in courts across the country, the Sixth Circuit discussed Rule 1006:

> There is no requirement in Rule 1006, however, that it be literally impossible to examine the underlying records before a summary or

> chart may be utilized. All that is required for the rule to apply is that the underlying "writings" be "voluminous" and that in-court examination not be convenient.

*Id.* at 562.  In *Scales*, the court approved the government's use of a series of large summary charts introduced through the testimony of a special agent.  The first chart summarized all the charges contained in the indictment, and each of the remaining charts summarized a count or an overt act, or both, by reproducing or making reference to some of the documentary proof already in evidence.  The court specifically approved the use of a special agent, who was not an expert witness, to present the charts.  Because the agent had properly catalogued the exhibits previously admitted into evidence, had knowledge of the analysis of records referred to in the charts, and had supervised the compilation of the charts, the court held that the agent was the proper person to attest to their authenticity and  accuracy.

Other circuits have cited *Scales* as authority for upholding the admissibility of summary charts and summary testimony, where such summaries assisted the jury in organizing the proof and understanding the charges against the defendant.  In *United States v. Lemire*, 720 F.2d 1327, 1328 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1226 (1984), the court held that "a non-expert summary witness can help the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses throughout the trial."  The D.C. Circuit specifically rejected the defendant's contentions that a special agent was an improper summary witness because he was not an "expert," and that the summary witness provided an unwarranted second closing argument for the government.  In *United States v. Jennings*, 724 F.2d 436, 443 (5th Cir. 1984), *cert. denied*, 467 U.S. 1227 (1984), the Fifth Circuit relied upon *Scales*, in holding that a special agent is qualified to present summary charts which do not contain complicated calculations requiring the need of an expert witness for

accuracy. *See United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979) (purpose of a summary witness is simply to aid the jury in examination of evidence already admitted).

The Government's proposed use of summary charts and summary witness testimony in this case will, consistent with the above-cited authority, assist the jury as finder of fact in organizing the proof and understanding the charges against Diab. The summary charts, and the testimony of the summary witnesses concerning the charts, will be limited to evidence which is admissible or has been admitted and has been made available to the defense for examination and copying.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

By:  /s/ Vanessa V. Healy
Vanessa V. Healy (OH: 0092212)
Brenna L. Fasko (OH: 0084897)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3652/3618
(216) 522-2403 (facsimile)
Vanessa.Healy@usdoj.gov
Brenna. Fasko@usdoj.gov